*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANNE MARKEL,

       Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL,

       Defendant-Appellee,

and

HOSPITAL CONSULTANTS, PC, LINET
LONAPPAN, M.D., and IOANA MORARIU,

       Defendants.

UNPUBLISHED
January 4, 2024

No.   350655
Oakland Circuit Court
LC No.   2018-164979-NH

ON REMAND

Before:  RIORDAN, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

The issue before this Court involves defendant William Beaumont Hospital's (Beaumont) vicarious liability for alleged malpractice committed by defendant Linet Lonappan, M.D., an independent contractor who treated plaintiff, Mary Anne Markel, at Beaumont.  The trial court granted summary disposition in favor of Beaumont, concluding that Dr. Lonappan was not an actual or ostensible agent of Beaumont.

In plaintiff's initial appeal,[1] this Court held that the trial court erred with respect to plaintiff's actual-agency theory, but affirmed the trial court's ruling with respect to ostensible agency. *Markel v William Beaumont Hosp*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2021 (Docket No. 350655) (*Markel I*). Our Supreme Court reversed the latter holding, concluding that this Court's analysis of the ostensible-agency issue was inconsistent with *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240; 273 NW2d 429 (1978), and remanded to this Court for reconsideration of that issue under the appropriate standard. *Markel v William Beaumont Hosp*, 510 Mich 1071 (2022) (*Markel II*).

We once again affirm on the issue before us.[2]

## I. FACTS

In *Markel I*, this Court set forth the background facts of this case:

In early October 2015, plaintiff underwent an endometrial ablation and was discharged the same day. A week later, on October 9, 2015, plaintiff went to Beaumont's emergency department complaining of numbness in her feet, back pain, and an inability to urinate. After a blood count, CT scan, and MRI, it was determined plaintiff had degenerative disc disease in her lumbar spine, with several disc extrusions and protrusions, and a urinalysis was conducted. On October 10, 2015, plaintiff was transferred to Beaumont's observation unit and a physician's assistant, Janay Warner, ordered another urinalysis and a urine culture study. Later that afternoon, plaintiff was admitted to the hospital and seen by defendant, Dr. Linet Lonappan. Dr. Lonappan, a board-certified internist and hospitalist, was employed by defendant, Hospital Consultants, PC. Hospital Consultants had an agreement with plaintiff's physician, Dr. John Bonema, to provide treatment for his patients that presented to Beaumont. Dr. Lonappan completed a history of plaintiff, performed a physical examination, and was aware a urine culture study and urinalysis had been ordered.

On the morning of October 11, 2015, plaintiff, whose fever spiked the night before but had returned to normal since, spoke with a pain-medicine physician, Dr. Daniel Sapeika, regarding her back pain. Dr. Sapeika noted plaintiff's desire to be discharged and recommended that, if she were discharged that day, she was to receive an epidural on October 12, 2015, on an outpatient basis. On the afternoon of October 11, 2015, Dr. Lonappan discharged plaintiff from the hospital and instructed her to follow up with neurosurgery, internal medicine, and pain

---

[1] After denying plaintiff's application for leave to appeal, *Markel v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered November 6, 2019 (Docket No. 350655), this Court was directed by our Supreme Court to consider her appeal as on leave granted, *Markel v William Beaumont Hosp*, 505 Mich 961 (2020).

[2] Our earlier decision concerning actual agency remains unchanged as the Supreme Court did not consider this issue.

medicine. Approximately three hours later, at 5:47 p.m., a preliminary result from plaintiff's urine culture tested positive for streptococcus agalactiae. Dr. Lonappan testified that although she was aware of the result of plaintiff's urine culture study, she did not believe the standard of care required her to contact plaintiff with the results, nor that the results were relevant to plaintiff's care. On October 12, 2015, the final report for the urine culture study was released and showed plaintiff was positive for Group B Streptococcus. On October 13, 2015, plaintiff returned to Beaumont's emergency department complaining of pain in both knees and pain in multiple joints. Plaintiff was provided intravenous antibiotics, and had surgical drainage of an epidural abscess and revision of her knee replacements. Plaintiff remained admitted to Beaumont until November 22, 2015.

Plaintiff filed a complaint alleging, relevant here, that Dr. Lonappan was negligent and Beaumont was vicariously liable for Dr. Lonappan's negligent acts. Plaintiff alleged Dr. Lonappan was an "actual agent[ ], apparent agent[ ], ostensible agent[ ], servant and/or employee[ ] of William Beaumont Hospital" and, as a result, Beaumont was "vicariously liable for the negligent acts and/or omissions" of Dr. Lonappan. Beaumont moved for summary disposition under MCR 2.116(C)(10), asserting, in relevant part, that it was not vicariously liable for the allegations against Dr. Lonappan under either an ostensible-agency theory or an actual agency theory. Beaumont argued that it was undisputed that Dr. Lonappan was employed by Hospital Consultants but never employed by Beaumont. Beaumont further asserted that Dr. Lonappan became involved in plaintiff's treatment through an agreement between Hospital Consultants and Dr. Bonema, and asserted that Beaumont did not make any representations to plaintiff to "lead her to believe that an agency existed between the hospital" and Dr. Lonappan. Beaumont noted that, as a result, and on the basis of existing caselaw, it was not vicariously liable for the allegations against Dr. Lonappan and was entitled to summary disposition under MCR 2.116(C)(10).

Plaintiff responded, arguing the existence of an agency relationship was a question of fact for the jury. Plaintiff also argued that, under [*Grewe*] and its progeny, Dr. Lonappan was the ostensible agent of Beaumont. Plaintiff, pointing to Dr. Lonappan's deposition testimony, asserted she had a reasonable belief that Dr. Lonappan was acting on Beaumont's behalf. Plaintiff noted that Dr. Lonappan wore a white laboratory coat with credentials from Beaumont as she provided care and treatment to plaintiff, and that Dr. Lonappan introduced herself to patients by stating her name and indicating she was assigned to their care by Beaumont. Further, plaintiff asserted that Dr. Lonappan "made no statements" and "took [no] affirmative action to indicate to [plaintiff] that she was not an employ[ee] of the hospital."

* * *

Following a hearing on Beaumont's motion for summary disposition, the trial court concluded Dr. Lonappan was not an actual agent of Beaumont, noting that once Beaumont assigned Dr. Lonappan a patient, Dr. Lonappan was

responsible for examining the patient, coming up with a plan for that patient's diagnosis and treatment, and ultimately deciding whether to discharge the patient. . . .

The trial court also agreed with Beaumont that an ostensible agency did not exist between Beaumont and Dr. Lonappan, and, as a result, summary disposition of plaintiff's vicarious-liability claim was also proper on that basis. The trial court found that plaintiff only recalled seeing a "pain doctor" during her time at Beaumont from October 9, 2015 to October 11, 2015, and plaintiff "essentially testified she had no recollection of Dr. Lonappan." The trial court concluded that, "[w]ithout any recollection of Dr. Lonappan, there [was] nothing to support [p]laintiff's claim that she harbored a reasonable belief that Dr. Lonappan was acting as a hospital employee." Moreover, the trial court concluded it could not consider plaintiff's affidavit because it "conflict[ed] with her previous deposition testimony." The trial court also found that while Dr. Lonappan testified she typically informed patients that Beaumont assigned her to their care, there was no indication Beaumont "encouraged Dr. Lonappan to say this or that it acquiesced in the use of this vernacular." The trial court recognized that Dr. Lonappan's laboratory coat indicated an affiliation with Beaumont, potentially supporting a conclusion Beaumont encouraged a belief that Dr. Lonappan was its employee or agent. However, the trial court noted that Dr. Lonappan's laboratory coat also reflected her affiliation with Hospital Consultants. Additionally, the trial court found the affiliations printed on the laboratory coat "immaterial given that Plaintiff does not even recall having seen it." [*Markel I*, unpub op at 1-3.]

We affirmed the trial court to the extent that it dismissed plaintiff's vicarious-liability claim on the basis of ostensible agency but reversed that court to the extent that it dismissed the claim on the basis of actual agency. *Id*. at 7. Accordingly, this Court remanded to the trial court for further proceedings with respect to the actual-agency theory. *Id*. at 9.

Plaintiff sought leave to appeal in our Supreme Court, which was granted. *Markel v William Beaumont Hosp*, 508 Mich 957 (2021). Following oral argument, our Supreme Court reversed and remanded to this Court "for reconsideration under the proper legal standard," explaining, in relevant part:

In *Grewe*, a patient presented at the emergency room for treatment and received care from a doctor with whom she had no preexisting relationship. The *Grewe* Court explained that to determine if ostensible agency exists, "the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." When determining in *Grewe* that the patient had been looking to the hospital for treatment rather than as a mere situs, we acknowledged as significant that there was "nothing in the record which should have put the plaintiff on notice that [the doctor] . . . was an independent contractor as opposed to an employee of the hospital" and there was "no record of any preexisting patient-physician relationship with any of the medical personnel who treated the plaintiff at the hospital." A patient who has clear notice

of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital.

In concluding the doctor was the hospital's ostensible agent, the *Grewe* Court cited the emergency room setting and the lack of a preexisting relationship between doctor and patient. The rule from *Grewe* is that when a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief. Put another way, the "act or neglect" of the hospital is operating an emergency room staffed with doctors with whom the patient, presenting themselves for treatment, has no prior relationship. . . .

* * *

The panel majority concluded that because the plaintiff "did not recall" the doctor who treated her at the hospital, she could not have formed a reasonable belief that the doctor was the hospital's agent. This holding is in tension with *Grewe*, which held that when a patient presents at the emergency room for treatment, the patient's belief that a doctor is the hospital's agent is reasonable unless dispelled in some manner by the hospital or the treating physician. We also note that patient testimony is not required to establish ostensible agency under *Grewe*.

* * *

Because the trial court and the Court of Appeals misinterpreted and misapplied *Grewe*, we remand this case for reconsideration under the appropriate standard. . . . [*Markel II*, 510 Mich at 1071-1073 (citations omitted).]

Having received and considered the parties' respective supplemental briefs, we now again decide this case.[3]

---

[3] In its supplemental brief, Beaumont referred to the following excerpt from plaintiff's deposition, which was not included in the trial-court record, in support of its argument that she was aware that Dr. Lonappan was an independent contractor at the time of her hospitalization:

*Q*. Okay. Do you know what Hospital Consultants is?

*A*. I do.

*Q*. What's your understanding with that?

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10)." *Mazzola v Deeplands Dev Co LLC*, 329 Mich App 216, 223; 942 NW2d 107 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. DISCUSSION

"A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents." *Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002). "Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe*, 404 Mich at 250. However, a hospital may be vicariously liable under a theory of ostensible agency. See *id*. at 252. "An ostensible agency may be created when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *People v Jordan*, 275 Mich App 659, 663; 739 NW2d 706 (2007) (quotation marks and citations omitted). In the hospital context,

> before a recovery can be had against a principal for the alleged acts of an ostensible
> agent, three things must be proved, to wit: (First) The person dealing with the agent

---

> *A*. My understanding is my internists don't go to the hospital so if I have to go to the hospital they need someone medical to treat me they refer it to this kind of a group.

In response to this argument, plaintiff sought to expand the record with her recent affidavit explaining that her testimony in this regard referred to knowledge acquired after her hospitalization. We denied the motion to expand the record with her affidavit but expanded the record to include her complete deposition. *Markel v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered August 18, 2023 (Docket No. 350655).

After reviewing the entirety of plaintiff's deposition testimony at issue, we agree with plaintiff that her testimony does not necessarily establish her knowledge at the time of her hospitalization. The use of the present tense "is" in her testimony may reasonably refer to her knowledge at the time of her deposition but not at the time of her hospitalization. Since plaintiff's knowledge at the time of her deposition is not relevant to the issue before us, this deposition testimony is not considered in our analysis.

must do so with belief in the agent's authority and this belief must be a reasonable one; (second) such belief must be generated by some act or neglect of the principal sought to be charged; (third) and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Grewe*, 404 Mich at 252-253 (cleaned up).]

In *Markel II*, our Supreme Court clarified the first two elements of the *Grewe* test. With regard to the first element, "[a] patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital." *Markel II*, 510 Mich at 1071. However, in most cases, "when a patient presents at the emergency room for treatment, the patient's belief that a doctor is the hospital's agent is reasonable unless dispelled in some manner by the hospital or the treating physician." *Id*. at 1072. With regard to the second element, "the 'act or neglect' of the hospital is operating an emergency room staffed with doctors with whom the patient, presenting themselves for treatment, has no prior relationship." *Id*. at 1071-1072.

While this appeal generally has been framed in terms of "ostensible agency," our Supreme Court has explained that *Grewe* was an application of both "the doctrine of agency by estoppel" and "ostensible agency." *Wilson v Stilwill*, 411 Mich 587, 609; 309 NW2d 898 (1981) ("In [*Grewe*], we held that, under the doctrine of agency by estoppel, or ostensible agency, a hospital may be held liable for the acts of medical personnel who were its ostensible agents although the named defendant physician is not found liable.").[4] Indeed, *Grewe* itself referred to "agency by estoppel" as the basis for its decision. See *Grewe*, 404 Mich at 250-251 ("[I]f the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found.").

Both our Supreme Court and this Court have consistently held that agency by estoppel requires reasonable or justifiable "reliance" on the apparent authority of the purported agent. See, e.g., *Flat Hots Co v Peschke Packing Co*, 301 Mich 331, 337; 3 NW2d 295 (1942) ("Agency by estoppel can be established only where defendant holds the agent out as being authorized, and the plaintiff, relying thereon, has acted in good faith upon such representation."); *David Stott Flour Mills v Saginaw Co Farm Bureau*, 237 Mich 657, 662; 213 NW 147 (1927) ("[I]n order for the holding out of another as an agent to act in a given capacity, or knowingly and without dissent permitting him to do so, or where the habits and course of dealing have been such as to warrant a presumption of authority, to constitute an estoppel it must also appear that persons claiming rights

---

[4] The doctrine of "agency by estoppel" provides that "when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent either generally or for a particular purpose, he will be estopped to deny such agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances." *Pettinger v Alpena Cedar Co*, 175 Mich 162, 166; 141 NW2d 535 (1913) (quotation marks and citation omitted).

by reason thereof have relied thereon in good faith and in the exercise of reasonable prudence.") (quotation marks and citation omitted); *Little v Howard Johnson Co*, 183 Mich App 675, 683; 455 NW2d 390 (1990) ("Hence, the alleged principal must have made a representation that leads the plaintiff to reasonably believe that an agency existed and to suffer harm on account of a justifiable reliance thereon.").[5]

Accordingly, because *Grewe* was decided on the basis of agency by estoppel, and because agency by estoppel requires reliance on the apparent authority of the purported agent, a plaintiff invoking *Grewe* and agency by estoppel must establish that reliance. Indeed, the third element of the *Grewe* test refers to "the third person *relying on* the agent's apparent authority." (Emphasis added.) Therefore, for plaintiff to prevail under *Grewe* at the summary-disposition stage, she must show that she relied upon Beaumont's representation, through its operation of an emergency department, that Dr. Lonappan was its agent.[6]

We conclude that plaintiff has failed to show such reliance. We first note that plaintiff, in her supplemental brief, does not contend that she showed reliance. Instead, she argues that reliance is not an element of her ostensible-agency theory.[7] We recognize that some of the secondary legal authorities cited by plaintiff suggest that there is a distinction between ostensible agency and agency by estoppel, such that ostensible agency does not require reliance but agency by estoppel does. See, e.g., 1 Restatement Agency, 3d, § 2.03, comment e. ("To establish that an agent acted with apparent authority, it is not necessary for the plaintiff to establish that the principal's manifestation induced the plaintiff to make a detrimental change in position, in contrast to the showing required by the estoppel doctrines . . . ."). However, because our Supreme Court has characterized *Grewe* as involving agency by estoppel, see *Grewe*, 404 Mich at 250-251; *Wilson*, 411 Mich at 609, and because agency by estoppel unquestionably requires reliance, see *Flat Hots Co*, 301 Mich at 337, that is the law by which we are bound and which we must apply.

There is nothing in the record to suggest that plaintiff relied upon any representation by Beaumont that Dr. Lonappan was its agent. On October 9, 2015, plaintiff went to Beaumont's emergency department to seek treatment for her pain and other symptoms. Although it may reasonably be contended that plaintiff did so in reliance upon the representation that the emergency department (or "ER") doctors were agents of Beaumont, see *Markel II*, 510 Mich at 1071-1072 (explaining that "the 'act or neglect' of the hospital is operating an emergency room staffed with

---

[5] See also *Sasseen v Comm'y Hosp Foundation*, 159 Mich App 231, 239; 406 NW2d 193 (1986) ("[A]n ostensible agency arises when circumstances are such as to cause a third party to reasonably rely upon the existence of an agency relationship so as to estop the alleged principal or agent from denying the agency.") (quotation marks and citation omitted).

[6] Compare *Markel II*, 510 Mich at 1084 n 12 (VIVIANO, J., *dissenting*) ("I would not address defendant's alternative argument that reliance on the hospital's act or omission is required and plaintiff here has failed to demonstrate it. This issue might arise on remand to the Court of Appeals, which should consider this Court's pre-*Grewe* caselaw discussed above to determine whether reliance is required.").

[7] Further, she contends that JUSTICE VIVIANO in his *Markel II* dissent erred by suggesting otherwise because he "confused two separate concepts," ostensible agency and agency by estoppel.

-8-

doctors with whom the patient, presenting themselves for treatment has no prior relationship"), Dr. Lonappan was not an ER doctor. In fact, Dr. Lonappan did not treat plaintiff until the day following her decision to go to Beaumont's emergency room. It was not until then that she was referred to plaintiff pursuant to a pre-existing agreement between Hospital Consultants and her primary care physician, Dr. Bonema.

In other words, while plaintiff may have relied upon Beaumont's initial representation regarding its emergency-department doctors when she first decided to go to Beaumont, the evidence in this case indicates that she was a passive participant when she was subsequently treated by Dr. Lonappan a day later, per an agreement Dr. Lonappan's practice group has with her physician. That is, plaintiff received medical care from whomever was assigned to her at the time by Hospital Consultants without any action by her or reliance on her part to any representation relating to Beaumont. Consequently, there is no genuine issue of material fact as to whether plaintiff relied upon Beaumont's representation that Dr. Lonappan was its agent. Thus, the trial court correctly granted summary disposition in favor of Beaumont on this issue.

## IV. CONCLUSION

The *Grewe* test, as applicable to the matter before us, requires a showing of "reliance" upon the apparent authority of the purported agent. The evidence fails to show such reliance, and plaintiff seemingly concedes as much in her supplemental brief. Therefore, the trial court properly granted summary disposition in favor of Beaumont on the issue of ostensible agency as laid out in *Grewe*, and we once again affirm that aspect of its ruling.[8]


/s/ Michael J. Riordan
/s/ Brock A. Swartzle

---

[8] As noted, however, further proceedings are necessary concerning actual agency.